IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES WHITTENBERG,

        Plaintiff,                             No. CIV S-04-2313 FCD JFM P

    vs.

LIEUTENANT L. ROLL,

        Defendant.                       FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. In his verified complaint, plaintiff alleges defendant Roll "reclassified and changed [his] already approved and established paid lead person position to a non-paid position for the purposes of intimidation, retaliation, harassment and discrimination." (October 29, 2004 Complaint at 3.) Plaintiff alleges that Correctional Officer L. Snelson and plaintiff were informed by Ms. Germaine that the a.m. leadperson porter position, PTR 3.601, had always been a paid position. (Id. at 4.) Plaintiff contends his equal protection rights were violated when he was not paid from 2001 to 2003 for working as a leadperson porter, when other leadperson porters were paid. The amount at issue is around $900.00. (Pl.'s Dep. at 41.)

                        SUMMARY JUDGMENT STANDARDS UNDER RULE 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

        Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the

1

> pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

1    In the endeavor to establish the existence of a factual dispute, the opposing party
2 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
3 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
4 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
5 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
6 genuine need for trial.'"  Matsushita, 475 US. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
7 committee's note on 1963 amendments).

8    In resolving the summary judgment motion, the court examines the pleadings,
9 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
10 any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
11 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
12 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
13 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
14 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
15 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
16 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
17 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
18 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
19 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

20    On December 1, 2004, the court advised plaintiff of the requirements for opposing
21 a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
22 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v.
23 Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

24                                    ANALYSIS

25    The Civil Rights Act under which this action was filed provides as follows:

26    Every person who, under color of [state law] . . . subjects, or causes
     to be subjected, any citizen of the United States . . . to the

3

> deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

"The Thirteenth Amendment does not prohibit involuntary servitude as part of imprisonment for a crime. See Draper v. Rhay, 315 F.2d 193, 197 (9th Cir.), cert. denied, 375 U.S. 915 (1963)." Piatt v. MacDougall, 773 F.2d 1032 (9th Cir. 1985). Piatt held that where a state statute provides prisoners a right to compensation for their work, they can bring a § 1983 claim alleging that the state revoked their right to pay without due process. Id. at 1035-37. Piatt recognizes that, because a due process claim necessarily fails if the plaintiff has no property interest in the relevant property, a federal due process claim may succeed or fail depending on whether the § 1983 plaintiff has a cognizable property interest under state law. Id. at 1035. Inmates, however, are not "employees" of the prison entitled to minimum wage under Fair Labor Standards Act. Burleson v. State of California, 83 F.3d 311 (9th Cir. 1996).[1]

Under California law, able-bodied prisoners are required to work. Cal. Penal Code § 2700. "Whenever by any statute a price is required to be fixed for any services to be performed in connection with the work program of the Department of Corrections, the compensation paid to prisoners shall be included as an item of cost in fixing the final statutory

---

[1] Other courts have held that inmates have no right to be paid for prison labor. Manning v. Lockhart, 623 F.2d 536, 538 (8th Cir. 1980), Holton v. Fields, 638 F.Supp. 1319 (S.D.W.Va. 1986).

price. Prisoners not engaged on work programs under the jurisdiction of the Prison Industry Authority, but who are engaged in productive labor outside of such programs may be compensated in like manner." (Id.)[2]

The implementing regulation provides that a prisoner's work obligation "may be a full day of work, education, or other program activity, or a combination [thereof]." Cal. Code Regs. tit. 15 § 3040(a). Section 3040(j) provides that

> The allocation of paid inmate work/training assignments on an institution-specific basis shall be made by the institution's inmate pay committee. Each institution shall administer an inmate pay program consistent with the budget allotted for such assignments. As directed and in accordance with section 3380, Department and institutional inmate pay committees shall administer inmate rate and wage matters subject to these regulations.

Cal. Code Regs. tit. 15 § 3040(j). "An inmate's assignment to a paid position is a privilege dependent on available funding, job performance, seniority and conduct. These factors shall be criteria considered in determining an inmate's eligibility for pay earning status and rate of pay. Cal. Code Regs. tit. 15 § 3040(k). "Inmates assigned to paid positions will be paid from the fund or allotment of the institution's/facility's support budget." Cal. Code Regs. tit. 15 § 3041.1(c).

Retaliation claims encompass five elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, [footnote 5 omitted] and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of "harm that is more

/////

---

[2] The Prison Industry Board (Cal. Penal Code § 2802) "shall adopt and maintain a compensation schedule for prisoner employees. Such compensation schedule shall be based on quantity and quality of work performed and shall be required for its performance, but in no event shall such compensation exceed one-half the minimum wage provided in Section 1182 of the Labor Code. . . . This compensation shall be credited to the account of the prisoner." Cal. Penal Code § 2811. California Penal FCode § 2811 became effective July 1, 2005.

5

than minimal" from the alleged retaliation can satisfy the fourth element without an allegation of a chilling effect.  See Rhodes at 567, 568, n.11.

In the instant case, plaintiff alleges he was assigned a leadperson position on September 1, 2001, and that this leadperson position was a paid position on September 1, 2001. (Opp'n at 4.)  Plaintiff has provided a copy of his Work Card, stamped with Lt. Roll's name; this card sets forth a start date of September 1, 2001, and a pay grade 4, for Position No. PTR 3.601 (Opp'n, Ex. E, F.)  The work card, however, does not reflect the date it was printed.  (Id.)

Plaintiff has provided a work history form for this position, Porter Bld 6 Lead, which also confirms pay grade 4, beginning September 1, 2001, for position number PTR-3.601. (Opp'n, Ex. D.)  This form does not indicate what date pay grade 4 became effective and appears to have been printed out in 2005.

Plaintiff claims he submitted evidence of standardization in pay for lead person positions, attaching an agenda dated March 12, 2001 for the inmate pay committee.  (Opp'n., Ex. H.)  However, the agenda references an open discussion, on which is handwritten "talked about our standardized plan." (Opp'n, Ex. H.) "We are waiting for Terry to get all his issues answered." (Id.) "Richard Flores - putting together standardized inmate pay plan." (Id.)  These handwritten notes do not reflect that a standardized pay plan was in effect in September 2001 and do not demonstrate that a standardized plan had been enacted to ensure that all lead positions were paid.  Plaintiff has not provided further evidence that such a standardized plan was enacted.[3]

Appended to plaintiff's verified complaint are three documents signed by Housing Officer L. Snelson.  (Id., Exs. 1-3.)  The first is a memo dated March 5, 2003, directed to K.

---

[3] Plaintiff appends two pages from the Department of Corrections Operations Manual, revised June 11, 1993.  However, the language included therein references the conditional nature of payment for labor:  "Prisoners engaged in productive work may receive compensation as determined by The Director of the DOF as specified in PC 2700." (Opp'n., Ex. L, quoting Cal. Code Regs. tit 15 § 51120.1.)(Emphasis added.)

6

Dickinson, Business Manager, in which Officer Snelson asks for a pay number for position PTR-3-601, leadman porter, because the position "currently does not have a pay number." (Id., Ex. 1 at 1.) Officer Snelson states "This is a discrepancy since the other buildings have a paid Leadman." (Id.) The second memo, dated May 8, 2003, is directed to "Germaine, I/M Trust," seeks back pay for plaintiff for the period September 1, 2001 through April 30, 2003. (Complaint, Ex. 2.) The third memo, dated May 21, 2003, is directed to "Inmate Trust, ATTN. Germaine," and states:

> Position PTR - 3.601 was a non-pay position in building 16. Due to the discrepancy, since each building has at least 1 pay number, I submitted a request to the Business Manager to give PTR-3.601 a pay number. . . . When the pay number was approved I contacted Inmate Assignment Office and the position was changed. The inmate received a new work card, then I was informed that the pay number has been effective since 9-01.

(Complaint, Ex. 3.)

Plaintiff has not, however, filed a declaration by Officer Snelson, Ms. Germaine or any other prison official confirming that position PTR-3.601 was a paid position as of September 2001.

Plaintiff has not provided a declaration by inmate Lang confirming that the position was a paid position during the time he held the position prior to plaintiff. Defendant, on the other hand, has provided a declaration that prior to April 4, 2003, "no lead porter in building 16 had a pay number." (Motion, Ex. A.) Defendant has also provided evidence that the pay grade for position PTR-3.601 was "N" or none when it was held by inmate Lang. (Motion, Ex. B.) Although plaintiff claims he was previously paid wages for a position where the pay grade was listed as N,[4] that is insufficient to prove that inmate Lang was receiving wages despite the N on inmate Lang's form.

---

[4] The position was for Metal Fabrication, pay grade N, 7/3/93-4/1/05 (Opp'n, Ex. K, at 1.) Plaintiff contends he was getting paid for this position, despite the "N" notation. (Opp'n at 4.)

Defendant has also provided evidence that pursuant to Officer Snelson's request, on April 14, 2003, Associate Warden Nancy L. Hardy signed off on the Inmate Pay Committee's recommendation that the lead porter in Building 16 be given a pay number comparable to other inmates performing the same task. (Motion, Ex. D.) Although defendant Roll was a member of that committee, he did not attend the committee meeting on April 4, 2003 where the request was reviewed. (Motion, Exs. A, D.)

While plaintiff believes that defendant Roll had the authority to individually change the pay status for plaintiff's position, he has failed to produce any evidence supporting this theory. Defendant, on the other hand, has provided a declaration from himself and Associate Warden Brown confirming that it is the inmate pay committee which controls either the creation of new inmate pay positions or changes to existing positions. (Motion, Ex. A & Ex. C.) This authority is also confirmed in regulation § 3040(j) of Title 15 of the California Code of Regulations.

Based on the above, plaintiff has failed to demonstrate that defendant Roll was connected in any way to the failure of prison officials to pay plaintiff back wages for his work as a lead person porter from 2001 to 2003. Defendant Roll is entitled to summary judgment on the retaliation claim as well because plaintiff has failed to demonstrate defendant Roll took an adverse action against plaintiff. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff alleges that because defendant Roll is the inmate assignment officer who makes rounds in every building on plaintiff's yard, and plaintiff has seen defendant Roll enter the building "where plaintiff has a previous lawsuit against 5 state prison c/o's," that defendant Roll started retaliating against plaintiff. (Opp'n. at 5.) However, defendant Roll has provided a declaration stating he was not aware of the other lawsuit until he read the complaint in this action in January of 2005. (Motion, Ex. A.) Plaintiff has failed to adduce evidence that defendant Roll retaliated against plaintiff based on that pending lawsuit.

/////

1         Finally, in his opposition, plaintiff alleges his evidence demonstrates that other
2 similarly situated leadpersons were paid while plaintiff was not "in violation of the equal
3 protection clause of the Fourteenth Amendment, invidious discrimination based on plaintiff's
4 race." (Opp'n. at 2.)  However, the predecessor to the position at issue here, Mr. Lang, was
5 Caucasian and also was not paid.  Plaintiff has also failed to provide a declaration from Officer
6 Snelson or any other prison official confirming that all other leadpersons at the prison were paid
7 from 2001 to 2003.  Plaintiff has also failed to demonstrate that these other leadpersons were
8 similarly situated in terms of "available funding, job performance, seniority and conduct."  Cal.
9 Code of Regs. tit 15 § 3040(k).  Thus, defendant Roll is entitled to summary judgment on this
10 claim as well.

11         Accordingly, IT IS HEREBY RECOMMENDED that defendant's June 26, 2006
12 motion for summary judgment be granted.

13         These findings and recommendations are submitted to the United States District
14 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty
15 days after being served with these findings and recommendations, any party may file written
16 objections with the court and serve a copy on all parties.  Such a document should be captioned
17 "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that
18 failure to file objections within the specified time may waive the right to appeal the District
19 Court's order.  Martinez v. Ylst, 95 1 F.2d 1153 (9th Cir. 1991).
20 DATED: July 3, 2007.

        UNITED STATES MAGISTRATE JUDGE

24 /001; whit2313.msj